2023R00294/CS

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Katharine S. Hayden |
| v. | Crim. No. 24-cr-391 |
| JOSHUA GOLTRY | 15 U.S.C. §§ 78j(b), 78ff<br>17 C.F.R. § 240.10b-5 |

## INFORMATION

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey charges:

1. At all times relevant to this Information:

    a. JOSHUA GOLTRY was a resident of New York, New York, and operated and controlled JAG Cap LLC, d/b/a JAG Capital ("JAG Capital"), which purported to be an investment fund with a history of successful performance.

    b. Bank-1 was a financial institution with an office in Red Bank, New Jersey.

    c. Financial Advisor-1 was employed by Bank-1 in Red Bank, New Jersey.

## The Scheme

2. From in or around 2020 through in or around September 2023, in the District of New Jersey and elsewhere, the defendant,

**JOSHUA GOLTRY,**

knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use

and employ manipulative and deceptive devices and contrivances, and attempted to do so by: (a) employing devices, schemes, and artifices to defraud; (b) making, and causing others to make, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon persons—that is, GOLTRY engaged in a scheme to commit securities fraud regarding investments in JAG Capital.

### Goal of the Scheme

3. The goal of the scheme was for GOLTRY to fraudulently induce investors (the "Victim Investors") to invest in JAG Capital by making material misrepresentations and omissions and then use the fraudulently obtained investments on, among other things, personal expenses and repayments to earlier investors.

### Manner and Means of the Scheme

4. It was part of the scheme to defraud that:

    a. GOLTRY induced Victim Investors to send him funds by falsely representing that he would, and did, invest their money through JAG Capital in "diversified tech opportunities," primarily in securities on which he falsely claimed to have performed "extensive fundamental due diligence."

    b. In order to solicit investors, GOLTRY created JAG Capital marketing materials that included numerous material misrepresentations about JAG Capital and its performance. For example, in one set of marketing materials

2

sent to potential investors in or around November 2020, GOLTRY falsely claimed that JAG Capital's track record included positive returns nearly every quarter from 2018 through mid-2020, with three of those quarters showing returns greater than 50%. GOLTRY included charts falsely asserting that JAG Capital's performance far outperformed three well-known stock indices nearly every quarter.

   i. On or about April 14 and 15, 2021, in reliance on those and other material misstatements and omissions, Victim-1 invested approximately $500,000 in JAG Capital.

   ii. On or about April 19, 2021, in reliance on those and other material misstatements and omissions, Victim-2 invested approximately $200,000 in JAG Capital.

  c. In or around 2022 and 2023, GOLTRY used multiple versions of false and inconsistent marketing materials to solicit investments. For example, in certain versions of the materials sent to potential investors, GOLTRY claimed JAG Capital's 2020 rate of return was approximately 229%, while in other marketing materials, GOLTRY falsely claimed that JAG Capital's 2020 rate of return exceeded 1,000%. Similarly, in certain materials sent to potential investors, GOLTRY falsely claimed that JAG Capital managed approximately $20,000,000 in assets, while in other marketing materials, GOLTRY falsely claimed that JAG Capital managed more than $50,000,000 in assets.

  d. As a result of his material misrepresentations and omissions, GOLTRY obtained more than approximately $3 million from Victim Investors.

   e. While GOLTRY invested some Victim Investor funds, those investments did not match the type of investments he pitched to Victim Investors, and GOLTRY ultimately lost those funds on unsuccessful trades and investments.

   f. GOLTRY also diverted and misappropriated a significant portion of the Victim Investor funds, which he used to pay back previous investors and on personal expenses, including rent for his Manhattan apartment, vacations, and personal credit card bills.

   g. GOLTRY concealed that he misappropriated Victim Investor funds by, among other things, providing JAG Capital's fund administrator with fraudulent documents, including documents falsely inflating the value of certain investments. As a result, the fund administrator provided false information to Victim Investors regarding the status of their investments.

   h. In or around May 2023, after depleting nearly all Victim Investor funds, GOLTRY solicited a short-term loan for JAG Capital from an investment company ("Investment Company-1"), claiming that JAG Capital's funds were temporarily illiquid. In truth, GOLTRY applied for the loan to make an investment in an attempt to repay earlier Victim Investors. To secure the loan, GOLTRY provided Investment Company-1 with falsified documents purporting to be a letter of credit and sight draft issued by Bank-1 and signed by Financial Advisor-1. In fact, Bank-1 never issued the letter of credit or sight draft and Financial Advisor-1 never signed either document.

        i.      On or about May 17, 2023, in reliance on the fraudulent letter of credit and sight draft, among other things, Investment Company-1 transferred $150,000 to JAG Capital.

In violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## FORFEITURE ALLEGATION

1. As a result of committing the offense charged in this Information, the defendant,

**JOSHUA GOLTRY,**

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, that GOLTRY obtained that constitutes or is derived from proceeds traceable to the commission of such offense, and all property traceable to such property.

Substitute Assets Provision

2. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property.

*Philip R. Sellinger*
PHILIP R. SELLINGER
United States Attorney